IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DOROTHY BERGERON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-2851 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION,    § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
## DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[1] in this social security appeal are Plaintiff's Motion for Summary Judgment (Document No. 17), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 18), Defendant's Cross Motion for Summary Judgment (Document No. 15), and Defendant's Memorandum in Support of Cross Motion for Summary Judgment (Document No. 16). After considering those four documents, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Cross Motion for Summary Judgment is DENIED, and the matter is REMANDED for further proceedings.

---

[1]On January 27, 2009, the parties consented to trial before the undersigned Magistrate Judge. Upon consent, the case was transferred to the Magistrate Judge for all proceedings. (Doc. No. 14).

**I. Introduction**

Plaintiff Dorothy Bergeron ("Bergeron") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). Bergeron's Motion for Summary Judgment (Document No. 17) states that substantial evidence does not support the decision of the Administrative Law Judge ("ALJ"), and that the ALJ, Gerald L. Meyer, committed errors of law when he found that Bergeron had no severe impairments and was not disabled under the Act. Bergeron seeks an order reversing the Commissioner's decision and remanding her claims for further proceedings. The Commissioner responds in Defendant's Cross Motion for Summary Judgment (Document No. 15) that there is substantial evidence in the record to support the ALJ's decision that Bergeron was not disabled because she had no severe impairments, that the decision comports with applicable law, and that it should therefore be affirmed.

**II. Administrative Proceedings**

On October 12, 2004, Bergeron protectively filed for DIB and SSI benefits, claiming she has been unable to work since October 13, 2004, as a result of various impairments, including diabetes, chest pain and heart problems, arthritis and back pain, hypertension, blurred vision, gastrointestinal problems, Hepatitis C, head aches and depression. (Tr. 80-100, 615-632).[2] The Social Security Administration denied her applications at the initial and reconsideration stages. (Tr. 40-54). After that, Bergeron requested a hearing before an ALJ. (Tr. 55-56). The Social Security Administration granted her request and the ALJ held a hearing on January 11, 2007, at

---

[2] "Tr." refers to the transcript of the administrative record.

which Bergeron's claims were considered *de novo*. (Tr. 24-35). On March 27, 2007, the ALJ issued his decision finding Bergeron not disabled. (Tr. 11-20). The ALJ found that Bergeron met the disability insured status requirements for DIB benefits and had continued to meet them through December 31, 2009, and that Bergeron had not engaged in substantial gainful activity since October 13, 2004, her alleged onset date. Further, based on the medical records, the ALJ found that Bergeron had the following medically determinable impairments, diabetes mellitus, mood disorder, hepatitis C and back disorder, but that these impairments, either singly or in combination, were not severe impairments and, as such, Bergeron was not disabled within the meaning of the Act.

Bergeron then asked for a review by the Appeals Council of the ALJ's adverse decision. (Tr. 9-10). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. After considering Bergeron's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on June 3, 2008, that there was no basis upon which to grant Bergeron's request for review. (Tr. 6-8). The ALJ's findings and decision thus became final. Bergeron has timely filed her appeal of the ALJ's decision. 42 U.S.C. § 405(g). The Commissioner has filed a Motion for Summary Judgment (Document No. 15), and a Memorandum in Support thereof. (Document No. 16). Bergeron has filed a Motion for Summary Judgment (Document No. 17), to which the Commissioner has responded. (Document No. 18). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 632.  (Document No. 11). There is no dispute as to the facts contained therein.

**III.  Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards."  *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).  Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.  42 U.S.C. § 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision.  *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but no `substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability.  *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if she is "incapable of

5

engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, she will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

The ALJ concluded at step two, based on the medical evidence, that Bergeron had no severe impairments or combination of impairments, which have lasted or which could last for 12 continuous months. The ALJ wrote:

3. The claimant has the following medically determinable impairments: diabetes mellitus, mood disorder, hepatitis C and back disorder (20 CFR 404.1520(c) and 416.920(c)).

Dr. Donald Gibson examined the claimant on January 21, 2005, at the request of the state agency. The claimant reported a history of high blood sugars, pain in the neck, back and knees. However, the claimant was able to stand and walk without difficulty. Physical examination revealed that claimant's neck was supple without masses, adenopathy and bruits. Examination of the back revealed a nontender back with full range of motion. There was no clubbing, cyanosis or edema of the extremities. Peripheral pulses were 2+ and intact. Peripheral joint exam was normal with full range of motion. There was no warmth, effusion or deformity. Dr. Gibson diagnosed the claimant with mild back pain, diabetes and hepatitis C. However, Dr. Gibson noted there was no limitation of movement or evidence of radiculopathy. Dr. Gibson also noted that the claimant did not have any end organ damage and neuropathy as a result of her diabetes. There was no evidence of ascites, GI bleeding or liver failure as a result of her hepatitis C. (Exhibit 13F).

A[n] MRI of the lumbar spine performed on April 16, 2005, revealed no acute findings. On June 1, 2005, an x-ray of the lumbar spine revealed normal vertebral body height, intervertebral disc spaces, anatomic alignment and no fracture. On September 14, 2005, examination revealed only mild bulging discs. (Exhibits 19F and 27F).

On October 24, 2004, the claimant was evaluated by Harris County Hospital District for depression. It was indicated that the claimant may be paranoid. However, it was later noted that she did not appear paranoid and she was not exhibiting internal stimuli. At that time, she was diagnosed with depression not otherwise specified (NOS). (Exhibit 22F).

Dr. Manizeh Mirza-Gruber evaluated the claimant on January 24, 2005, due to complaints of stress from her job. At that time, the claimant was not taking any psychiatric medication. Mental status examination revealed that the claimant may be exhibiting mild paranoid delusions. There was no other thought disturbances and she denied any suicidal ideation. Dr. Mirza-Gruber diagnosed the claimant with a mood disorder. Dr. Mirza-Gruber assessed the claimant with a fair prognosis and a GAF of 60. The undersigned notes that a GAF of 60 only indicates mild to moderate symptoms. (Exhibit 14F).

**4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive**

7

**months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 and 416.921).**

Basic work activities are the abilities and aptitudes necessary to do most jobs. Examples of these include:

1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2. Capacities for seeing, hearing, and speaking;

3. Understanding, carrying out, and remembering simple instructions;

4. Use of Judgment;

5. Responding appropriately to supervision, co-workers, and usual work situations; and

6. Dealing with changes in a routine work setting (SSR 85-28).

In reaching the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques– that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a

finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statement:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

The claimant testified that she is diabetic. Her diabetes has affected various parts of her body. She receives indigent care from Harris County.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

As for the opinion evidence, in a letter dated January 9, 2007, Dr. Melvin Schultz indicated that the claimant was disabled. (Exhibit 32F). A treating physician's medical opinion of the nature and severity of a claimant's impairment is given controlling weight if it is well supported by the evidence (20 §§ CFR 404.1527(d) and 416.927(d)). Dr. Schultz's opinion and his residual functional capacity are not well-supported by any medically acceptable clinical and laboratory diagnostic

techniques and is inconsistent with the other substantial evidence. Under Social Security Ruing 96-1p through 96-9p, the ultimate determination of disability is for the Commissioner to decide under the regulations. Based on these factors, the undersigned gives Dr. Schultz's opinion little weight.

On numerous occasions the claimant requested a letter from her treating physicians stating that she was disabled. However, the physicians indicated that they would not be able to complete a letter due to the mild symptoms of her condition. (Exhibits 26F and 27F).

One of the claimant's treating physicians indicated that the claimant has not been compliant in taking prescribed medications and following prescribed treatment, which suggests that the symptoms may not have been as limiting as the claimant has alleged. (Exhibit 27).

The claimant's allegations are not supported by the opinions of treating or examining sources. The claimant has not sought treatment for a mental disorder on a regular basis; in fact, the records show very limited treatment for a mental disorder since the alleged onset date. The clear weight of the medical evidence, both findings and opinions, substantiate only infrequent pain, resulting in only temporary restrictions. Infrequent pain and temporary restrictions are consistent with a finding of non-severe. In view of the above considerations, particularly the x-rays, MRI's and lack of psychiatric treatment, the clear weight of the evidence supports that no severe impairments exist. Therefore, the undersigned finds that the claimant's impairments when taken together do not significantly limit her ability to work.

The undersigned has considered the issue of credibility. In that regard, the findings do not reasonably explain "severe" symptoms as noted. None of the above factors are considered conclusive. Rather, the evidence is viewed as a whole. The undersigned concludes that although the claimant may have several impairments as shown above, the impairments singly and in combination constitute only a slight abnormality having such a minimal affect on the claimant there would be no significant interference with the ability to work. The impairments are, thus, not "severe" within the meaning of the Act. (Tr. 16-19).

The Court must determine whether substantial evidence supports the ALJ's step two finding.

At step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do

basic work activities.[3] The step two requirement that the claimant have a severe impairment is generally considered to be "a de minimis screening device to dispose of groundless claims." *Smoven v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). Simply put, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984); 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999); 20 C.F.R. § 404.1523. Even though the burden at step two lies with the claimant, the claimant need only make a minimal showing to move to the next step in the five step sequential process. With respect to a minimal showing, the mere presence of a condition is not sufficient to make a step two showing. *See Bowen,* 482 U.S. at 153.

---

[3] The ability to do most work activities encompasses "the abilities and aptitudes necessary to do most jobs." *Williams v. Sullivan*, 960 F.2d 86, 88 (8th Cir. 1992). Examples include physical functions such as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work situation. *Id.* at 88-89; 20 C.F.R. § 1521(b).

Here, the medical evidence shows that Bergeron has been diagnosed with and treated for various ailments including hepatitis C, back problems and arthritis, gastrointestinal problems, headaches, blurred vision, hypertension, diabetes, and depression.[4] Some of her complaints such as headaches, gastrointestinal problems, chest pain and heart problems, blurred vision, are symptoms related to diabetes and hypertension.[5] Bergeron contends that the ALJ erred at Step 2, by ruling that her physical impairments as well as her mood disorder were non-severe impairments. The Commissioner, in response, contends that the ALJ properly determined, at Step two, that none of Bergeron's physical or mental impairments were severe impairments.

In this case, upon this record, the ALJ erred in his application of the law at Step two. It is undisputed that the ALJ correctly set forth the applicable framework for step two of the evaluation process:

> At Step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is

---

[4] The initial denial of Bergeron's applications referred to diabetes, gastrointestinal problems, hepatitis C, arthritis, depression and spinal injury. (Tr. 46, 632). The denial of her motion for reconsideration listed diabetes, chest pain and heart problems, arthritis and back pain, hypertension, blurred vision, gastrointestinal problems, hepatitis C, headaches and depression as her alleged impairments. (Tr. 54, 628). The ALJ in his opinion makes reference only to diabetes mellitus, mood depression, hepatitis C, and back disorder.

[5] Although there are numerous medical records dating back to 1998, the relevant records for purposes of this appeal are those relevant to the time period for which Bergeron sought DIB and SSI. Bergeron's relevant time period for Title II benefits was February 7, 2005, her alleged onset date, through March 27, 2007, the date of the ALJ's decision. As to Bergeron's Title XVI application, the relevant time period is October 12, 2004, the protective filing date of her application, through March 27, 2007, the date of the ALJ's decision. Bergeron's representative at the January 11, 2007, hearing stated that Bergeron had an attending physician for around ten years (in the 1990's) but when she relocated to Houston, Texas, and later stopped working, she had no insurance and all of her subsequent medical care had been through various clinics affiliated with the Harris County Hospital District. (Tr. 31). Similarly, Bergeron's former treating physician, Dr. Melvin Schultz confirmed this in a letter dated December 22, 2006. (Tr. 613-614).

>"severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish (sic) only a slight abnormality or a combination of slight abnormalities that would have not more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step. (Tr. 15).

However, the ALJ amplified and elaborated on this framework in evaluating Bergeron's impairments, individually and in combination, by evaluating the intensity, persistence and limiting effects of the symptoms, and by making credibility determinations about her symptoms.[6] *See supra*, pp. 8-10. Because the ALJ required more than the threshold showing required under step

---

[6] At the January 11, 2007, Administrative Hearing, Bergeron was not questioned by the ALJ or her representative about her impairments, medical treatment, daily activities, or compliance with her medications. The ALJ only questioned Bergeron about a list of medications that she had provided (Tr. 213) because this was not in a format the ALJ recognized as issued by the Harris County Hospital District. (Tr. 30-34). With respect to the list, the ALJ commented: "I'll tell you what. If you are really taking all of these there are probably some problems. You need to make sure that one doctor knows, every doctor knows what you are taking because...." (Tr. 30). In response to the ALJ's questioning, Bergeron's representative stated:
>So the pharmacy is responsible. She is on indigent care. So everything that is listed here we can match it with the medications, and that is one of the reasons I brought it. Because Harris County pays for her medicine right now, at least the medicines that we show here where she can show an actual bottle, or capsule, or lancet, or test strip or, you know, whatever. But these are filled by Harris County Hospital District pharmacists. (Tr. 34).

The hearing lasted fourteen minutes and included testimony from Dr. Johnson, a vocational expert. (Tr. 34-35). The ALJ posed the following hypothetical question:
>ALJ: Ms. Johnson, if an individual was able to stand or walk six hours in an eight hour day, or sit for six hours in an eight hour day, lifting or carrying 10 pounds frequently or 20 pounds occasionally, and mentally limited to a simple routine work environment. Could they do the past work that you described?
>
>VE: No, sir. They could not. (Tr. 34).

Likewise, no expert medical testimony was offered.

13

two and as interpreted by this Circuit in *Stone*, substantial evidence does not support the ALJ's step two finding that Bergeron has no abnormalities which either alone or in combination, would have such a minimal effect(s) that they would not be expected to interfere with her ability to do basis work activities.  Because Bergeron has made a threshold showing that her medically determinable impairment or combination of impairments, including but not limited to diabetes[7], hypertension[8], back disorder[9], hepatitis C[10], audiology, heart and nerve problems,[11] and mood

---

[7] Records from the relevant time frame show that Bergeron consistently had high glucose readings.  For instance, glucose of 274 on October 23, 2004 (Tr. 571); January 21, 2005, glucose of 451 (Tr. 343); February 10, 2005, emergency room visit because of complaints of vomiting and diarrhea.  Glucose reading of 309.  (Tr. 372); April 13, 2005, glucose of 293 (Tr. 563); April 15, 2005, glucose of 379 (Tr. 379); April 16, 2005, glucose of 262 (Tr. 262); May 31, 2005, glucose of 143 (Tr. 443, 548); July 12, 2005, glucose of 262 (Tr. 526); August 6, 2005, glucose of 233 (Tr. 523); September 8, 2005, glucose of 387 (Tr. 517); November 7, 2006, glucose of 269 (Tr. 606); December 14, 2006, glucose of 204 (Tr. 604); December 22, 2006, glucose of 204 (Tr. 602). Bergeron underwent a consultative examination by Dr. Donald Gibson on January 21, 2005.  (Tr. 341-344).  Dr. Gibson opined that she had "[d]iabetes: poorly controlled.  The patient has high blood sugars.  No severe end organ damage."  (Tr. 342).

[8] Records show that Bergeron's blood pressure was high despite medication during the relevant time frame.  At Bergeron's consultative examination with Dr. Donald Gibson, she had a reading of 130/60. (Tr. 342).  On May 20, 2005, Bergeron had a reading of 177/103. (Tr. 558, 497); In particular, when she reported to the emergency room on May 29, 2005, and May 30, 2005, she not only inquired about disability but also had high pressure readings and was given medication to lower her pressure.  For example, on May 29, her pressure was 180/72, 153/74, 154/72, 175/80 (Tr. 452, 455).  The next day, her readings were 145/80, 192/84, and 192/93. (Tr. 440).  On May 31, 2005, the note indicates "HTN uncontrolled" 237/94 and 190/91.  (Tr. 494).  Other readings from 2005 were also high.  For instance, on July 2, 2005, 203/118 and 190/110 (Tr. 536); September 14, 2005, 141/83 (Tr. 515); October 15, 2005, 181/86 and 216/103 (Tr. 609); and May 12, 2006, 238/89 (Tr. 608).

[9] Records show Bergeron sought treatment for back and shoulder pain following an injury at her work place on July 29, 2004, when a file cabinet fell on her.  On October 14, 2004, she was referred by her then treating physician, Dr. Nguyen, to the Pain Management Consultants. (Tr. 258-259).  The results of a MRI showed a bulging disk at C3-4.  Her neck examination showed a decreased range of motion secondary to pain.  Bergeron also had a decreased right grip strength.  The doctor opined she had cervicalgia, cervical radiculopathy, and a bulging disk at C3-4.  It was recommended that Bergeron undergo epidural steroid injections but she declined for reasons not

disorder[12], significantly limit(s) her ability to do basic work activities,

---

stated on the report. See also (Tr. 315-318, 317). Bergeron underwent another MRI on April 15, 2005. (Tr. 398-399). The MRI showed a "broad-based disc bulging at the levels of L4-5 and L5-S1 causing mild narrowing of the neural foramina bilaterally at these levels. (Tr. 398-399). Another MRI taken the same day of Bergeron's cervical spine was negative. (Tr. 397). A x-ray taken on May 30, 2005 of Bergeron's spine showed "L5/S1 disc degenerative changes with narrowing of neural foramina" and that she had had a "laminotomy of L5/S1." (Tr. 445, 542, 611). Because of Bergeron's continued complaints of multiple neck and back pain, she had an MRI of the brain on December 5, 2006. According to the results, Bergeron had "pontine lesions of uncertain etiology. The findings could represent ischemia, demyelinating disease or osmotic myelinolysis." (Tr. 605).

[10] Bergeron was diagnosed with hepatitis C in the 1990's. Other than a history of hepatitis C in the records, there was little objective or examination findings showing ongoing treatment of hepatitis C.

[11] The medical records further show a February 7, 2005, audiological report revealed that Bergeron had "slight to mild sensorneural hearing loss bilaterally." (Tr. 371). In connection with a hospital visit by Bergeron in April 2005 for chest pains, she underwent an echocardiogram. The results were basically normal except for "abnormal mitral in flow pattern suggestive of grade 1 LV diastolic dysfunction." (Tr. 396). A chest x-ray taken on October 18, 2005, showed "cardiomegaly with low lung volumes." (Tr. 502). Bergeron underwent a consultative medical examination on January 21, 2005, by Dr. Donald Gibson. (Tr. 341-344). In addition, agency doctors evaluated the medical records and completed an RFC-Physical on February 14, 2005, and July 11, 20905. (TR. 465-472). The doctor opined that Bergeron had no manipulative, visual, communicative or environmental limitations. With respect to postural limitations, Bergeron could frequently balance, stoop, kneel, crouch and crawl and could occasionally climb ramps/stairs, and ladder/rope/scaffold. As to exertional limitations, that Bergeron could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and walk about six hours, sit for six hours and could do unlimited pushing and pulling.

[12] With respect to a mood disorder, the record shows that Bergeron's complaints of depression and mood disorder are related to her work environment and health concerns. There are treatment notes from an October 24, 2004, from mental health care professionals at Ben Taub Hospital. (Tr. 462-464). On intake the doctor noted "if people [at] her office are doing what she reports then [patient] not paranoid, if they are not "all in on it" then she is paranoid. Probably more like the later." (Tr. 464). She has a GAF of 30. However, an addendum, noted no need for hospitalization due to possible malingering. On January 24, 2005, Bergeron, in connection with her application for benefits, was examined by Dr. Mirza-Gruber. (Tr. 347-349). Bergeron had a GAF of 60. Based on her mental status status examination of Bergeron, Dr. Mirza-Gruber opined:
    AXIS I: 1. Mood Disorder due to Cervical and Spinal chronic pain and worsening
    diabetes mellitus and depressive feature—293.83. Ms. Bergeron has had a history of

15

> multiple medical problems which she feels have been exacerbated by her recent stressful work conditions with more variations in her glucose with regard to her diabetes and the onset of chronic pain in the cervical and spinal areas. She currently endorses sadness, despondency about her life circumstances, changes in her concentration and energy, feelings of hopelessness and worthlessness and middle insomnia.
>
> 2. Rule out Delusional Disorder, Persecutory type–297.1. In the absence of any other information, if Ms. Bergeron is correct in her believing that the IRS has schemed against her and has attacked her credibility and has said they are plotting against her, then there is no paranoid ideation present. However, if there is no evidence of any corroboration of Ms. Bergeron's story and history, then the diagnosis of a persecutory delusion should be considered as well.
>
> AXIS II: Cluster C Personality Traits.
>
> AXIS III: History of insulin-dependent diabetes mellitus, hypertension, irritable bowel syndrome, gastroesophaegeal reflux disease and chronic pain.
>
> Axis IV: Ms. Bergeron is divorced. She lives on her own. She has moderate severe work stress. She has complications with her medical problems.
>
>       *            *
>
> Prognosis: Fair with continuation of treatment, further elaboration and corroboration of her story and treatment as necessary, psychosocial support and rehabilitation.

Treatment notes from the IntraCare North Hospital on November 22, 2005, requested that Bergeron undergo a new psychological evaluation. She had a GAF of 40. (Tr. 582-587). On November 25, 2005, Bergeron reported that "it seems like Lexapro is working a little." (Tr. 580, 581). Bergeron cried throughout her December 16, 2005, appointment. Her medication was changed to Prozac. (Tr. 578-579). Finally, in connection with Bergeron's applications for benefits, an agency doctor reviewed her records and completed a Psychiatric Review Technique Form (Tr. 473-486) and a RFC-Mental (Tr. 487-490) on February 25, 2005, and July 11, 2005. The doctor opined that Bergeron had a mood disorder, possible delusion disorder and cluster C personality disorder, obsessive compulsive disorder. Based on these diagnosis, the doctor concluded that Bergeron would have "moderate" difficulties in maintaining social functioning. Likewise, the doctor completed an RFC based on Bergeron's mental status. (Tr. 487-490). According to the RFC, Bergeron was "moderately limited" in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and

activities, the ALJ should proceed to the next step in the five step sequential process. According, the matter should be remanded to the Commissioner for proceedings consistent with this Memorandum.

**V. Conclusion**

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner did not properly follow the guidelines propounded by the Social Security Administration and applicable case law at step two and that further development of the record is necessary. Based on these infirmities in the ALJ's opinion, substantial evidence does not support the ALJ's decision. The Magistrate Judge ORDERS that the Plaintiff's Motion for Summary Judgment is GRANTED, that Defendant's Cross Motion for Summary Judgment is DENIED, and the matter is REMANDED to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 5th day of November, 2009.

_____
Frances H. Stacy
United States Magistrate Judge

---

the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. *Id.*